UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MALIBU MEDIA, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | 1:12-cv-04680 |
| v. ) | |
| ) | Honorable Matthew Kennelly |
| JOHN DOES 1-55, ) | |
| ) | |
| Defendants. ) | |

**REPLY IN SUPPORT OF JOHN DOE 4'S MOTION FOR LEAVE TO PROCEED ANONYMOUSLY, MOTION TO QUASH AND MOTION TO SEVER**

NOW COMES Defendant John Doe 4, by and through counsel, and in support of his Motion for Leave to Proceed Anonymously, Motion to Quash and Motion to Sever states as follows:

I. ARGUMENT AND CITATION OF AUTHORITY

    A. Plaintiff Has Failed to Outline a Discovery Plan Which Might Make it "Reasonably Likely" that the Subpoenas Will be Used to Identify and Serve Actual Defendants, as Opposed to Used to Extort People Who Merely Pay the Internet Bill, Speaks Volumes.

John Doe 4 concedes that issuing subpoenas to ISPs to obtain information for the people who pay the bill on accounts that were allegedly used improperly "may be a *necessary* first step in identifying actual defendants" who committed an infringing download. However, the problem Malibu Media cannot overcome is that in light of the fact that an IP address can be used by multiple people (at the same time even), an ISP subpoena targeting the billing contact is not *sufficient*, by itself, to make it "reasonably likely" that actual defendants will be identified. See *Malibu Media v. John Does 1-10*, C.D. Cal. Case No. 2:12-cv-3614-RGK-SS, ECF No. 35, 10/10/12 (denying early discovery, even as to John Doe No. 1, as not "very likely" or even "reasonably likely" to result in identification of actual defendants). If Malibu presents no

discovery plan for how it intends to go from identifying **ISP subscribers** who pay the Internet bill, to identifying actual **John Doe defendants**, its subpoenas are improper and must be quashed. Malibu has a history of behavior suggesting that it simply wants to extort "settlements" from ISP subscribers, upon threat of publicly "naming" them in a lawsuit alleging that they are the John Doe who illegally downloaded pornography, regardless of whether they committed the alleged infringement or not. To date, Malibu Media has presented no plan as to how it intends to take a list of ISP subscriber names, and then use that list to identify actual defendants who can be named and served; instead, Malibu Media simply *assumes*, incorrectly, that the ISP billing contact is necessarily the infringing party. The problem with Malibu Media's theory of this case is that there are steps missing; an IP address is not a person, and an ISP billing contact does not necessarily equate to an actual defendant; but Malibu Media has set forth no plan to bridge these factual divides. *See, e.g., Digital Sins, Inc. v. Does 1-176,* -- F.R.D. --, 2012 WL 263491, at *3 (S.D.N.Y. Jan. 30, 2012).

> It would have been simple for Malibu Media to put this concern to rest in its opposition, by simply outlining a credible discovery plan, explaining how it will use ISP billing contact information to investigate and identify the actual John Doe defendants. That Malibu Media consistently refuses to put forward any such plan speaks volumes about the true purpose of these subpoenas. The subpoenas are not intended advance an actual controversy through to the merits; rather, they are merely designed to facilitate the *en masse* "shake down" of ISP subscribers—who may or may not have done anything wrong—upon threat of a public shaming. *Malibu Media v. John Does 1-10*, C.D. Cal. Case No. 12-cv-3623-ODW-PJW, ECF No. 7, 6/27/12, p. 6 ("The federal courts are not cogs in a plaintiff's copyright-enforcement business model. The Court will not idly watch what is essentially an extortion scheme, for a case that plaintiff has no intention of bringing to trial.")

In light of the significant concerns noted by many Courts regarding these kinds of cases—including myriad cases dealing directly with Malibu Media—John Doe 4 suggests

Malibu Media should be sent back to the drawing board, but allowed to try again. If Malibu Media *can* put forward a credible and minimally burdensome discovery plan, making it clear that the subpoenas are "reasonably likely" to result in identification and service on actual defendants, then the case can be allowed to proceed from there (at least as against any John Doe No. 1)[1].

B.  John Doe 4 Clearly Has Standing To Challenge The Subpoena.

Malibu's opposition focuses on the usual legal standards that apply to quashing most subpoenas, but a different standard applies to subpoenas seeking to identify anonymous John Doe defendants in file sharing cases.

First, as to the usual grounds for quashing a subpoena under Fed. R. Civ. Proc. 45(c)(3), Malibu neglects to address the part of the rule that is actually applicable, namely that part specifying that a subpoena *must* be quashed where it "requires disclosure of a privileged ***or other protected matter***." Fed. R. Civ. Proc. 45(c)(3)(A)(iii) (emphasis added).

Second, and more importantly, Malibu's opposition ignores the substantial body of case law holding that in cases like this, where a subpoena is being used as part of an *early discovery request*, *to unmask anonymous John Doe litigants in file sharing cases*, the Court must consider the so-called "*Semitool*" or "*Sony Music*" factors.[2]

---

[1] The subpoena for John Doe 4's information should be quashed in order to give effect to a Court order severing the Does. *see In re: BitTorrent Adult Film Copyright Infringement Cases,* 2012 U.S. Dist. LEXIS 61447 (E.D.N.Y. May 1, 2012) Case No. CV-11-3995-DRH-GRB, Dkt. No. 39, pp. 23-25; *Digital Sins, Inc. v. John Does 1-245*, S.D.N.Y. Case No. 11-cv-8170, Dkt. No. 18, 5/15/12, p. 7 ("Because I have severed and dismissed all of the claims against the defendants, I hereby, *sua sponte*, quash any subpoena that may be outstanding to any Internet service provider seeking information about the identity of any John Doe other than John Doe 1. Plaintiff is directed to send a copy of this order within 24 hours of its issuance to any and every internet service provider who has been served with a subpoena for any information concerning any other John Doe defendant."). To do otherwise would only encourage plaintiffs to avoid paying statutorily required filing fees by mis-joining as many Does as possible, and then forcing the Does to file, and the Court to hear, motions to sever.

[2] The Ninth Circuit's factors from *Semitool, Inc. v. Tokyo Electron America, Inc.*, 208 F.R.D. 273, (N.D. Cal. 2002) largely track with the Second Circuit's factors from *Sony Music Entm't Inc. v. Does 1–40,* 326 F. Supp. 2d 556, 566 (S.D.N.Y. 2004).

While many courts rightly conclude that file sharing is not really pure speech, and thus afforded only very limited First Amendment protection,[3] before a Court upholds (or authorizes) a subpoena seeking to unmask anonymous activity, the Court must first apply the requisite First Amendment analysis by balancing the four *Semitool / Sony Music* factors. Here, the Subpoena fails on two of the four factors, specifically: (i) as explained above, plaintiff has not demonstrated a "reasonable likelihood" of being able to identify the defendant through discovery such that service would be possible; and (ii) the complaint cannot withstand a hypothetical motion to dismiss all Does other than Doe No. 1, for misjoinder, or a motion to dismiss for lack of standing.

    C.    **The Subpoenas Issued By Malibu Media Are Returnable To Malibu's Counsel In Michigan, Which Does Not Comport With Federal Rule of Civil Procedure 45(a)(2)(C).**

A subpoena must issue from the court for the district where the production or inspection is to be made. *Battle v. Chicago Cycle, Inc.*, 2012 WL 550507, at *4 (N.D. Ohio Nov. 13, 2012); *J2 Goobal & Advanced Messaging Techs., Inc. v. Bank of Am. Corp.*, 2012 WL 5198367, at *2 (W.D.N.C. Oct. 19, 2012); *Schutter v. Easton Sports, Inc.*, 2012 WL 4966295 (M.D. Pa. Oct. 17, 2012); *Hickman v. Hocking*, 2009 WL 35283 (S.D. Ill. Jan. 6, 2009); *In re Gen. Motors Corp. Dex-Cool Prods. Liab. Litig.*, 2007 WL 627459 (S.D. Ill. Feb. 27, 2007).

In a recent ruling, the Honorable Gary Feinerman entered an Order quashing subpoenas issued by Malibu Media for this very reason. (*See Malibu Media, LLC v. John Does 1-37, 12-cv-06674*, Minute Orders entered December 21, 2012 (Doc. 26) and January 9, 2013 (Doc. 33).

---

[3] *See See Sony Music Entm't Inc. v. Does 1–40*, 326 F. Supp. 2d 556, 566 (S.D.N.Y. 2004) (surveying case law and concluding "that the use of P2P file copying networks to download, distribute, or make sound recordings available qualifies as speech entitled to First Amendment protection."); *Call of the Wild Movie, LLC v. Does 1-1,062*, D.D.C. Case No. CV-10-455, Dkt. No. 40, 3/22/2011, p. 21 (Howell, J.) ("file-sharers are engaged in expressive activity, on some level, when they share files on BitTorrent, and their First Amendment rights must be considered before the Court allows the plaintiffs to override the putative defendants anonymity by compelling production of the defendants' identifying information.")

Paul Nicolletti, Malibu's counsel in Michigan, issued the subpoena issued by Malibu Media in this matter. (Ex. A). As such, under the authority cited above, and relied upon by Judge Feinerman, the subpoena must be quashed.

II. Joinder is Inappropriate In This Case And All Does But John Doe 1 Should Be Severed.

Malibu relies on the controversial BitTorrent "swarm joinder" theory to justify paying only a single filing fee to sue 55 John Doe defendants for copyright infringement at the same time. While courts are split on whether swarm joinder passes muster under Rule 20, an increasingly large majority of Courts are severing John Does at this stage of litigation, *both* because some Courts find "swarm joinder" is impermissible,[4] *and* as a matter of the Court's discretion.[5]

Simply put, there is no binding precedent on this Circuit compelling this Court to reach a conclusion one way or another on swarm joinder.[6] Although there is certainly no shortage of cases finding swarm joinder appropriate at the outset of litigation, including some cases from this district, John Doe 4 believes it is fair to say that nationally, many more Courts have found for the Does than have found for the plaintiffs on swarm joinder.[7] The Honorable Milton Shadur was

---

[4] *See, e.g., Patrick Collins, Inc. v. John Does 1 through 9*, S.D. Cal. Case No. 3-12-cv-1436-H, ECF No. 23, 11/8/12, p. 6; *Patrick Collins v. John Does 1-10* C.D. Cal. Case No. 12-cv-5267-JVS, ECF No. 21, 11/5/12, p. 10.

[5] *See, e.g., Malibu Media, LLC v. John Does 1-28*, M.D. Fl. Case No. 8:12-cv-1667, ECF No. 22, 12/6/12 (Whittemore, J.); *Third Degree Films v. Does 1-47*, ___ F. Supp. 2d ___, D. Mass. Case No. 12-10761, ECF No. 31, 10/2/12, 2012 WL 4498911 (Young, J.).

[6] The D.C. Circuit is the first Court of Appeals likely to reach the issue of "swarm joinder." *See AF Holdings LLC v. Does 1-1,058*, D.D.C. Case No. 12-cv-0048 Dkt. 46, 8/6/12 (Howell, J.) *petition for permission to appeal granted sub nom. In re: Cox Comm'n., Inc. et al.,* D.C. Cir. Case No. 12-8011 (December 7, 2012).

[7] Although by no means a definitive measure, comparing the Lexis Shepard's reports for *Call of the Wild Movie, LLC v. Does 1-1,062*, 770 F. Supp. 2d 332 (D.D.C. 2011) (another lead case finding swarm joinder appropriate) with *Hard Drive Prods. v. Does 1-188*, 809 F. Supp. 2d 1150 (N.D. Cal. 2011) (a lead case severing does) shows how the tide has turned. As of January 3, 2013, *Call of the Wild* was "followed" 4 times in 2011 and 6 times in 2012. By contrast, *Hard Drive Prod's.*, which found for the Does, was "followed" 11 times in 2011 and 26 times in 2012.

5

one of the first Judges of this district to confront a case like this in *CP Prods., Inc. v. Does 1-300*, N.D. Ill. No. 10-cv-6255, ECF No. 32, 2/24/11 and he opined that "It would constitute a real stretch of the normal meaning of language for CP to call Rule 20(a)(2)(A) into play as the asserted predicate for lumping its separate asserted claims into a single lawsuit." *Id.* at fn 2. Judge Shadur is absolutely correct, swarm joinder is a real stretch. However, over the past two years, a few Courts have proven willing to entertain the swarm joinder theory. John Doe 4 respectfully argues that on both the law and the equities, severance is the right result.

**(a)** **Joinder is Not Permissible**
    (1) <u>This Court Should Adopt the Ninth Circuit Court of Appeals' Rule That Only a "Very Definite Logical Relationship" Can Support Joinder, and Sever the Does.</u>

On the Ninth Circuit there *is* Court of Appeals authority which defeats "swarm joinder," at least as alleged here. Specifically, the Ninth Circuit Court of Appeals has held that only a "very definite logical relationship" can support permissive joinder. *Union Paving Co. v. Downer Corp.*, 276 F.2d 468, 470 (9th Cir. 1960) (origin of "very definite logical relationship" standard on Ninth Circuit); *Bautista v. Los Angeles County*, 216 F.3d 837, 842-843 (9th Cir. 2000) (Reinhardt, J., concurring) ("claims that have 'very definite logical relationship' arise out of same transaction and occurrence"); *quoted in Hubbard v. Hougland*, No. 09-0939, 2010 U.S. Dist. LEXIS 46184, at *7 (E.D. Cal. Apr. 5,2010) ("The 'same transaction' requirement of Rule 20 refers to 'similarity in the factual background of a claim; claims that arise out of a systematic pattern of events' and have a 'very definite logical relationship.') (quoting *Bautista*).

Recently, at least two district courts in California have picked up on this argument and severed the Does in cases where the plaintiff made identical joinder allegations to those here at

issue.[8] *Patrick Collins, Inc. v. John Does, et al.*, C.D. Cal. Case No. 12-cv-5267-JVS-RNB, ECF No. 21, 11/5/12 (holding that on the Ninth Circuit there must be a "very definite logical relationship" to support joinder under Rule 20 so Doe defendants in BitTorrent case must be severed) (citing *Union Paving Co., supra,* and *Bautista*, *supra*); *Patrick Collins, Inc. v. John Does 1 through 9*, S.D. Cal. Case No. 12-cv-1436-H-MDD, ECF No. 23, 11/8/12 ("the majority view among district courts within the Ninth Circuit is that allegations of swarm joinder are alone insufficient for joinder". . . "Doe Defendants' alleged conduct therefore lacks the type of 'very definite logic relationship' required to permit joinder.") (*quoting Bautista, supra*).

The requirement that a logical relationship be "very definite" in order to support permissive joinder goes straight to the heart of the key flaw in the "swarm joinder" theory. As explained by Judge Randon of the Eastern District of Michigan, the idea behind the "swarm joinder" theory is that because of the way BitTorrent works, with people sharing the *exact same file* with one another, and the file necessarily originating from a single 'initial seeder,' participation in a BitTorrent download necessarily satisfied the "logical relationship" test because each peer downloading a given file can, as a matter of pure logic, somehow be linked back to that single initial seeder. *See Patrick Collins, Inc. v. John Does 1-21*, 2012 WL 1190840, at *4-5 (E.D. Mich. Apr. 5, 2012).[9] More specifically, Judge Randon reasoned, "in the universe of possible transactions, at some point, each Defendant downloaded a piece of the Movie, which

---

[8] The allegations at issue in the California Patrick Collins cases are identical to the allegations here because Malibu Media and Patrick Collins have the same lawyers in Miami overseeing this litigation nationally, and they use the same form complaints.

[9] Judge Randon's report and recommendation in *Patrick Collins*, which is cited at length in plaintiff's opposition, is undoubtedly the best explanation of the so-called "swarm joinder" theory; to really understand swarm joinder, one must understand BitTorrent, and Judge Randon ably explains. However, Movant's believe that Judge Randon's order was based on a faulty factual premise; namely, BitTorrent is **not** actually materially different from prior multi-source P2P file sharing protocols like KaZaA, Gnutella and eDonkey. Thus while Judge Randon's order is correct insofar as it explains how BitTorrent works, it does not sufficiency justify a break from many prior file sharing cases, involving older protocols, where joinder was routinely denied. *See Malibu Media, LLC v. John Does 1-30*, E.D. Mi. No. 12-cv-13312, ECF No. 33, 1/4/13, pp. 13-16 (Doe's pending Motion to Sever addressing Judge Randon's report and recommendation from *Patrick Collins* in detail).

had been transferred through a series of uploads and downloads from the Initial Seeder, through other users or directly, to each Defendant, and finally to IPP."[10] *Id*. The idea is that somehow, some way, through an *indeterminate* number of intermediary connections to other peers, each of whom may or may not be another Doe Defendant, each Doe Defendant can be linked back to the Initial Seeder. And as a result of the fact that every Doe Defendant in the swarm may be linked to the Initial Seeder, it therefore follows that every Doe Defendant can somehow be linked to every other Doe Defendant.

The main problem with "swarm joinder" is that the specifics of any given connection between two John Doe defendants are unknown in all key respects; the number of intermediary downloaders between Doe defendant and the initial seeder, the IP addresses of the intermediary downloaders, and whether any of the intermediary downloaders are other Doe defendants in this case (as opposed to unidentified third parties) are all facts which are unknown to the plaintiff. Or, to put that another way, the only connection between the Does the plaintiff can allege is an inherently *indefinite* relationship; plaintiff does not know what exactly the connection is, or how many steps it consists of. It may be true, as a matter of pure logic, that any Doe can theoretically be linked to any other Doe downloading the same file using BitTorrent. But such a loose standard clearly leaves much to be desired when it comes to the practical task of deciding whether different individuals, with different factual circumstances, may properly be joined into the same lawsuit.

Malibu Media argues in its opposition that, under Rule 20, "it is not necessary for the Defendants to have directly interacted with each other Defendant, or to have shared a piece of the file with each and every Defendant downloading the movie." The problem is that the "logical

---

[10] IPP is the name of the company that currently provides the services of Malibu Media's and Patrick Collins's technical expert, Tobias Fieser.

relationship" alleged by the plaintiff here is not merely indirect, it is also *indefinite*. Moreover, Malibu cannot be sure and has not alleged that *any* of the John Does *actually* shared even a single piece of a file with *any* of the other John Does. The best plaintiff can say is that some of the Does *may* have shared a piece of a file with some of the other Does (as opposed to with non-party intermediaries), as a matter of pure logic, based on the fact that everyone in the swarm shared the exact same file. Whether the mere *possibility* of participation in a common series of transactions, based on a nebulous and indefinite series of connections between the defendants is enough to support joinder is a question the Courts of Appeal will hopefully soon answer in this context. Until then though, John Doe 4 believes that the better view is the Ninth Circuits', that only a "very definite logical relationship" can support joinder. *Patrick Collins, Inc. v. John Does, et al.*, C.D. Cal. Case No. 12-cv-5267-JVS-RNB, ECF No. 21, 11/5/12; *Patrick Collins, Inc. v. John Does 1 through 9*, S.D. Cal. Case No. 12-cv-1436-H-MDD, ECF No. 23, 11/8/12.

    (2)    <u>John Does Using BitTorrent to Download Different Movies Months Apart from One Another Are Not Part of the Same Swarm and Not Part of Same Transaction or Occurrence.</u>

Even if the "swarm joinder" theory were good law, the Does, and specifically John Doe 4, should still be severed, because as alleged in Malibu's Complaint, the Doe defendants here were not really part of the "same swarm." In all of the cases Malibu Media has filed in this District, there is a substantial temporal gap, generally of 1–3 months, between the time of the alleged infringing downloads. A review of Exhibit "A" to any of Malibu's complaints bears this out.[11] In the instant case, the alleged infringing downloads occurred over a three month period.

At least one Court has gone so far as to hold that the "transactional relatedness" test is only satisfied in online download cases when parties are downloading a file *at the same time.*

---

[11] Here, John Doe 4 is alleged to have downloaded the movie at issue on April 17, 2012. He is the only John Doe of **55 John Does** with any alleged activity on that date. The "swarm" allegedly started on March 20, 2012 and ended on May 22, 2012. ECF No. 1-1.

9

*DigiProtect USA Corp. v. Doe*, 2011 U.S. Dist. LEXIS 109464, 8-9 (S.D.N.Y. Sept. 26, 2011) (***for defendants to be part of same "swarm," a user must have "downloaded the movie from the same website during overlapping times" with another member of the swarm***); see also *Raw Films, Inc. v. Does 1-32,* 2011 WL 6840590, at *2 (N.D. Ga. Dec. 29, 2011) ("Downloading a work as part of a swarm does not constitute 'acting in concert' with one another, particularly when the transactions happen over a long period of time;" (time span of 4 months)); *Liberty Media Holdings, LLC*, 2011 WL 5190106, at *3 (S.D. Fla. Nov. 1, 2011) (same; (***time span of two months***)); *Liberty Media Holdings, LLC v. BitTorrent Swarm,* 2011 WL 5190048, at *2–4 (S.D. Fla. Nov. 1 2011) (same; (***time span of two months***)). Here, plaintiff has not alleged that Does were downloading files *at the same time* so there really is no "swarm," and therefore no basis for "swarm joinder."

Judge Shadur of the Northern District of Illinois, who had expressed initial skepticism about swarm joinder back in early 2011, also found this point persuasive when revisiting the issue in greater detail in *Malibu Media, LLC v. John Does 1-25*, N.D. Ill. No. 12-cv-7579. ECF No. 11, 11/16/12. Quoting from a recent Michigan Law Review note, Judge Shadur endorsed the view that "judges should require plaintiffs to plead facts sufficient to show that the defendants were not only part of the same swarm, but that they were part of the same swarm <u>at the same time as one another</u>." *Id.* at p. 1; *citing* "The Case Against Combating BitTorrent Piracy Through Mass John Doe Copyright Infringement Lawsuits," 111 Mich. L. Rev. 283 (2012) (emphasis from law review). Accordingly, after considering joinder allegations identical to those at issue here, and referring to the Exhibit A to the complaint, which showed that the alleged infringements were spread out over 23 days, from August 13, 2012 to September 4, 2012, Judge Shadur explained that the "Court will await an appropriate request that (1) deals

10

with any joinder that qualifies under the earlier-quoted standard and (2) dismisses without prejudice all John Does who are not properly subject to such joinder." *Malibu Media, LLC v. John Does 1-25*, N.D. Ill. No. 12-cv-7579. ECF No. 11, 11/16/12, p. 2.

In sum, plaintiff's complaint completely undermines its argument that the Does are part of the "same swarm" because the complaint shows that the Does did not download files at the same time, but rather downloaded files months apart one another. Even if "swarm joinder" were good law, this, surely, would take the concept too far afield.

**(b)** **Even if Joinder is Technically Proper, Discretionary Severance is Appropriate**

(1) <u>Judge Whittemore of Florida and Judge Young of Massachusetts Have Both Recently Authored Highly Persuasive Opinions Finding Joinder Technically Proper, But Nevertheless Severing the Does on a Discretionary Basis.</u>

Many courts have found "swarm joinder" impermissible and then added that they believed that discretionary severance was also warranted. However, some other courts have taken a different route to the same result, finding that "swarm joinder" passes muster, but then severing the Does as a matter of the court's discretion. *E.g.*, *Malibu Media, LLC v. John Does 1-28*, M.D. Fl. Case No. 8:12-cv-1667, ECF No. 22, 12/6/12; *Third Degree Films v. Does 1-47*, ___ F. Supp. 2d ___, D. Mass. Case No. 12-10761, ECF No. 31, 10/2/12, 2012 WL 4498911, at *6; *Next Phase Distribution, Inc. v. John Does 1-27*, ___ F.R.D. ___, 2012 WL 3117182, at *4-5 (S.D.N.Y. July 31, 2012); *SBO Pictures, Inc. v. Does 1-20*, No. 12 Civ. 3925(SAS), 2012 WL 2304253, at *2 (S.D.N.Y. June 18, 2012); *Hard Drive Prods., Inc. v. Does 1-188*, 809 F. Supp. 2d 1150, 1165, 2011 U.S. Dist. LEXIS 94319, at *38-39 (N.D. Cal. Aug. 23, 2011).

Most recently, Judge James Whittemore of the Middle District of Florida addressed this issue in highly persuasive fashion in *Malibu Media, LLC v. John Does 1-28*, M.D. Fl. Case No. 8:12-cv-1667, ECF No. 22, 12/6/12. This decision is particularly notable for one important reason: like the Eastern District of Michigan, the Middle District of Florida had, until recently,

11

been a preferred forum for these kinds of lawsuits. As here, in the Middle District of Florida, there had been a few decisions buying in to plaintiff's "swarm joinder" theory (indeed, many of these decisions cite to Judge Randon's order in *Patrick Collins*) which resulted in a proliferation of these kinds of cases there. ***John Doe 4 respectfully suggests that this Court should look carefully at Judge Whittemore's order***, since all of the points he makes are equally applicable to the Malibu Media cases (and similar cases filed by Patrick Collins, Third Degree Films, and others) pending here.

Equally worthy of close review is Judge Young's October 2, 2012 order in *Third Degree Films v. Does 1-47*, ___ F. Supp. 2d ___, D. Mass. Case No. 12-10761, ECF No. 31, 10/2/12, 2012 WL 4498911. Judge Young's order is noteworthy because Judge Young had previously denied a John Doe motion for severance, finding "swarm joinder" to be appropriate at an early stage of litigation. Judge Young explained the change of course as follows,

> "Since its decision was issued in Liberty Media, this Court has entertained a profusion of filings in the mass copyright infringement cases on its docket. Upon further reflection and a deeper understanding of the policy concerns at play, the Court now revisits and amends its holding in Liberty Media. The Court continues to maintain that joinder is technically proper under Rule 20(a). The Court now holds, however, that in light of its serious concerns regarding prejudice to the defendants as a result of joinder, it ought exercise the broad discretion granted it under Rule 20(b) and sever the Doe defendants in this action and in similar actions before this Court." *Third Degree Films, supra,* at ECF No. 31, p. 10.

If this Court is convinced that joinder is technically proper, it should nevertheless sever the Does for the very compelling reasons explained by Judges Whittemore and Young.

(2) The Different Factual and Legal Circumstances Applicable to Each Doe—*e.g.*, Was the WiFi Network Encrypted and Who Had Access to It?—Will Differ Greatly, Which Weighs Heavily in Favor of Discretionary Severance.

An obvious point noted by almost all of the Courts that have considered discretionary severance is that each of the individual Doe defendants in these cases is likely to present completely different factual circumstances, which result in a variety of different legal defenses.

*E.g., In re: Adult Film Cases*, at p. 20 (noting the "panoply" of different legal defenses raised by a "half-dozen moving defendants, even at this preliminary stage"). Most notably, each Doe is going to have completely different circumstances and potential defenses on whether or not his or her home wireless network was unsecured, and depending on who may have had access to that network. Thus, even though there will admittedly be at least one common question of law or fact as between the Does, on a macro level, the differences between the facts and legal claims applicable to a given Doe outweigh any potential similarities insofar as joinder is concerned. *Id.*; *see also Patrick Collins v. John Does 1-10,* C.D. Cal. Case No. 12-cv-5267, ECF No. 21, 11/5/12, * 10 ("even if the requirements for permissive joinder were met, this Court would exercise its discretion to sever the claims against John Does 2 through 10. . . *the Court notes its agreement with cases that observe individualized facts and defenses weigh in favor of the exercise of discretionary severance*. See, e.g., Third Degree Films, Inc. v. Does 1-131*, 280 F.R.D. 493, 498 (D. Ariz. 2012)") (additional citations omitted).

  (3) <u>If Malibu Media Wishes to Use the Court's Subpoena Power as Part of a National Copyright Infringement "Settlement" Business, it Should Factor the **Full** Payment of Statutorily Required Filing Fees into the Business Model.</u>

As of December 26, 2012, a PACER search showed that Malibu Media had actually filed 402 lawsuits in 2012, paying $140,700 in filing fees. Based on a national average of 16.2 John Does per action for Malibu Media, calculated as of August 2012, that means that in these 402 actions, Malibu Media has sued approximately 6,512 John Doe Defendants. The cost to sue each of these defendants individually would have been $2,279,200. Subtracting actual filing fees Malibu Media paid from this later total works out to a ***net loss to the judiciary of a staggering $2,138,500, nationwide,*** all based on Malibu's reliance on the tenuous swarm joinder theory.

As Judge Gary Brown of the Eastern District of New York commented, "If the reported estimates that hundreds of thousands of [John Doe] defendants [in mass infringement cases] have been sued nationwide, plaintiffs in similar actions may be evading millions of dollars in filing fees annually. *Nationwide, these plaintiffs have availed themselves of the resources of the court system on a scale rarely seen. It seems improper that they should profit without paying statutorily required fees*." *In re: Adult Film Cases, supra*, p. 23.

Judge Whittemore also picked up on this thread, noting the legal basis for the requirement that filing fees be paid, and that "Regardless of the economic impact on Malibu, severing these Doe Defendants and requiring filing fees commensurate with the impact on the docket imposes no greater harm on Malibu than that imposed on any other plaintiff in the federal courts." *Malibu Media, LLC v. John Does 1-28*, M.D. Fl. Case No. 8:12-cv-1667, ECF No. 22, 12/6/12, pp. 11-13.

Malibu Media protests that if it were forced to pay full filing fees to sue the 600 people a month that it tries to target, it would face filing fees "simply beyond its financial capabilities as a company." (ECF No. 49, p. 13). Notably, Malibu Media offers no evidentiary support whatsoever for this argument. Certainly, the "settlement" business Malibu Media has built based on a perversion of the permissive joinder rule might become less profitable if it had to pay full filing fees. But neither the Copyright Act nor Rule 20 guarantee a copyright holder to profit (richly, one imagines) from filing what essentially amount to class actions in reverse.

II. <u>John Doe 4 Should Be Allowed To Proceed Anonymously Because Such Relief Is Permissible Under The Law Of The Seventh Circuit And Plaintiff Has Indicated In Its Response Brief That It Has No Objection To Such Relief.</u>

John Doe 4 provided ample authority in support of his position that should the Court decline to quash the subpoena at issue it should, at a minimum, enter an Order permitting him to

proceed anonymously. Plaintiff indicated in its response brief that it has no objection to the entry of such an Order. If such an Order is entered, John Doe 4 respectfully requests that he be allowed to proceed anonymously through discovery and dispositive motions.

      WHEREFORE, Defendant John Doe 4 respectfully requests that the Court enter an Order quashing the subpoena issued to Comcast seeking his identifying information or, in the alternative, that he be permitted to proceed anonymously in this matter through discovery and dispositive motions.

                                      Respectfully submitted,

                                      /s/ Erin Kathryn Russell
                                      Erin Kathryn Russell
                                      233 South Wacker Drive
                                      84th Floor
                                      T: 312-994-2424
                                      F: 312-706-9766
                                      erin@russellfirmchicago.com

CERTIFICATE OF SERVICE

    This is to certify that on January 14, 2013, a copy of the foregoing has been filed with the Clerk of Court via the Court's ECF filing system, thereby serving it upon all counsel of record.

                                      /s/ Erin Kathryn Russell

The Russell Firm
233 South Wacker Drive
84th Floor
T: 312-994-2424
F: 312-706-9766